STATE OF NORTH CAROLINA v. HARRISON NELSON, JR.

No. 587A85

(Filed 2 April 1986)

**Criminal Law § 5— notice of insanity defense—good cause for allowing late filing**
    Good cause existed as a matter of law for allowing late filing of the notice of defense of insanity, and the trial court erred in refusing to allow defendant to rely upon insanity as a defense and in excluding defendant's offer of proof of insanity, where defendant's court-appointed counsel was unavailable on the date of trial because of a family medical emergency and was removed by the trial judge as defendant's counsel; an attorney who had been employed by defendant's wife, mother and sister to assist court-appointed counsel took over the case and filed and served a notice of intent to rely upon the defense of insanity as soon as he was put in the position of counsel primarily responsible for defendant's defense; and counsel employed by defendant's wife and family was not counsel of record, had not conferred with defendant personally, had not interviewed witnesses, and thus had no opportunity or authority prior to the removal of court-appointed counsel to file a notice of defense of insanity. N.C.G.S. § 15A-959(a).

APPEAL by the State of North Carolina pursuant to N.C.G.S. § 7A-30(2) from a decision of a divided panel of the Court of Appeals, 76 N.C. App. 371, 333 S.E. 2d 499 (1985) reversing the defendant's conviction on 25 October 1982 in the Superior Court, WILSON County, of second degree murder. Heard in the Supreme Court on 13 March 1986.

*Lacy H. Thornburg, Attorney General, by Doris J. Holton, Assistant Attorney General, for the State.*

*Robert A. Farris and Thomas J. Farris for defendant-appellee.*

BILLINGS, Justice.

On 11 February 1982 the defendant was arrested and charged with the murder of Frank Junior Ward on 10 February 1982. On the next day Judge Harrell found that the defendant was indigent and appointed Milton F. Fitch, Jr. to represent him. Also on 12 February 1982 the defendant was committed to Dorothea Dix Hospital for observation and examination because it appeared from statements of the District Attorney "and others" that the defendant might be mentally incompetent to plead to the

charges. The report from that evaluation stated that the defend-
ant had been discharged from the Marine Corps "after psychiatric
treatment with 100% disability." He was diagnosed as suffering
from "chronic undifferentiated schizophrenia" but was found to be
competent to proceed. His mental illness was "fairly well compen-
sated with medication."

On 7 May 1982 Judge Brown ordered that the defendant be
transferred to the North Carolina Department of Correction
"where he shall be safely kept and shall be given necessary
medical care, treatment, and hospitalization." Apparently he was
returned to Wilson County, and a probable cause hearing was
held on 7 July 1982. However, a second order was entered on 1
September 1982 returning the defendant to the custody of the
North Carolina Department of Correction because he was "caus-
ing security problems in the Wilson County Jail by setting fires
and refusing to take medication for apparent mental condition."

On 17 February 1982 and 4 October 1982, attorney Fitch filed
requests for voluntary discovery, and on 14 October 1982 the
State responded to Mr. Fitch's request.

The case was scheduled for trial during the week of 25 Oc-
tober 1982. On the date of trial, according to an affidavit filed by
Mr. Fitch, Mr. Fitch did not appear because his daughter was in
the hospital and in serious condition. He telephoned either the
trial judge or the District Attorney's office and explained his
situation, assuming that the case would be continued. He made no
motion to withdraw and was not told that the case would go to
trial in his absence.

Mr. Robert A. Farris, Sr. was present in court on 25 October
1982. He had been employed by the defendant's mother, sister
and wife for the purpose of assisting court-appointed counsel. The
record does not indicate exactly what information was given to
the trial judge regarding Mr. Fitch's failure to appear on 25 Oc-
tober, but the affidavit of Mr. Fitch states that after 25 October
1982 he received information that he would be allowed to
withdraw.

On 25 October 1982 Mr. Farris filed a notice on behalf of the
defendant of intent to rely on the defense of insanity and served

it on the District Attorney. As a result of the notice, Judge Winberry entered an order which contained the following:

1. That Robert A. Farris, Attorney at Law, Wilson, North Carolina, has been retained by the wife and family of the defendant to represent him.

2. Mr. Farris stated to the undersigned Judge presiding in his chambers prior to the call of this case for trial on Monday afternoon, October 25, 1982, that he had been retained several months ago and that the members of the defendant's family had been paying him his fee over a period of several months.

3. That the notice to the district attorney that the defendant intended to raise and rely upon the defense of insanity was filed with the Clerk of Superior Court of Wilson County in open court at two ten p.m., on Monday, October 25, 1982.

4. That court convened at two p.m., on October 25, 1982 and thereupon after instructions were given to the jurors, the jurors were sworn at approximately two twenty-five p.m.

5. That thereafter the Court conducted a sentencing hearing in a case and at approximately three p.m., on October 25, 1982, the district attorney called this case for trial.

6. That upon the call of this case for trial, the Court advised counsel for the defendant that he would deny to the defendant the right to raise and rely on the defense of insanity in that the same had not been properly raised pursuant to provisions of G.S. 15A-959.

BASED ON THE FOREGOING FINDINGS OF FACT, THE COURT CONCLUDES AS A MATTER OF LAW:

1. That the defendant has not properly complied with the provisions of G.S. 15A-959 in order to raise and rely on the defense of insanity and for that reason and, in the discretion of the Court, the Court concludes that the defendant at this trial may not raise and rely on the defense of insanity.

The defendant excepted to the denial of his right to raise and rely on the defense of insanity. Trial of the case began on Tuesday, 26 October 1982. After the judge began his preliminary ex-

planation to the jury preparatory to jury selection, Mr. Farris requested a hearing and made a motion that he be allowed to withdraw. In support of his motion, he made the following statement to the court:

> He has, the defendant has indicated to me personally in no uncertain terms that he does not wish me to represent him and he would not cooperate with his counsel. He has further stated, as of yesterday, upon conferences and upon the call of this case, that he did not employ me and I would suggest to the Court that he did not personally employ me, but I was employed by his mother and sister and wife.
>
> COURT: To represent him?
>
> MR. FARRIS: To represent him and to assist Court Appointed counsel, Toby Fitch, who as I understand the Court has discharged or will discharge. The employment was on his behalf, but not by the defendant and was for the purpose of assisting his counsel. He has indicated to me yesterday and today that he refuses to cooperate with counsel and is not willing for me to represent him. . . .

Thereafter the defendant confirmed that he had not employed Mr. Farris. He stated, among other things: "He can not [sic] talk with me and I don't understand him. I am in another religion. I can't quote with him. I can't understand him. I don't want him to represent me." The trial judge did not at any time appoint Mr. Farris to represent the defendant but required the trial to continue.

The presentation of the State's case lasted until about 8:40 p.m. on 26 October. Mr. Farris then requested a recess until the next morning because he had no witnesses available other than the defendant. He issued subpoenas to other witnesses the following morning, including a psychiatrist and a mental health nurse from the Wilson-Greene Mental Health Center whom he had not interviewed before calling them to the stand. Consistently with his ruling before trial that the defendant would not be allowed to rely on the defense of insanity because his notice pursuant to N.C.G.S. § 15A-959(a) was not timely given, the trial judge sustained objections to opinion testimony regarding the defendant's mental condition at the time of the events in question.

The Court of Appeals reversed the defendant's conviction on the grounds that the termination of the attorney-client relationship between the defendant and Mr. Fitch was unjustified and that the trial court committed prejudicial error in refusing to allow defendant to introduce evidence of his insanity.

We modify and affirm.

The law is well settled that an indigent defendant is not entitled to select the attorney to be appointed to represent him. *State v. McNeil,* 263 N.C. 260, 139 S.E. 2d 667 (1965). Neither is a defendant entitled to a "meaningful attorney-client relationship" with court-appointed counsel. *Morris v. Slappy,* 461 U.S. 1, 75 L.Ed. 2d 610 (1983). However, neither of these propositions determines the question at issue here, for Mr. Farris was not appointed by the court to represent the defendant. Rather, he was employed by the defendant's family "to assist Court Appointed counsel, Toby Fitch." The record suggests that in this capacity, Mr. Farris neither conferred with the defendant personally nor interviewed witnesses prior to the time that Mr. Fitch became unavailable because of a medical emergency regarding his daughter and was removed by the trial judge as defendant's counsel.

As soon as Mr. Farris was put in the position of counsel primarily responsible for the defendant's defense, he filed and served a notice of intent to rely upon the defense of insanity. Prior to that time, Mr. Farris had not made a formal appearance in the case and was not counsel of record. The trial judge ruled that the notice was not timely and that the defendant could not rely on the insanity defense.

N.C.G.S. § 15A-959(a) (1983) requires timely notice "[i]f a defendant intends to raise the defense of insanity . . ." but further provides that "[t]he court may for cause shown allow late filing of the notice or grant additional time to the parties to prepare for trial or make other appropriate orders."

A majority of the Court of Appeals said that even without giving notice as required by the statute "an accused may prove any affirmative defense, including insanity, under the general plea of not guilty," 76 N.C. App. at 374, 333 S.E. 2d at 502, citing *State v. Mathis,* 293 N.C. 660, 239 S.E. 2d 245 (1977), and *State v. Johnson,* 35 N.C. App. 729, 242 S.E. 2d 517, *rev. denied, appeal*

*dismissed,* 295 N.C. 263, 245 S.E. 2d 779 (1978). Judge Cozort disagreed, noting that this Court had not expressly ruled on the question but had said in *Mathis,* "*'We do not reach the point upon the present appeal as to whether, by virtue of lack of notice to the State of intent to rely upon insanity as a defense, the defendant could be properly precluded from offering evidence of insanity'.* (Emphasis added.) 293 N.C. at 673, 239 S.E. 2d at 253." 76 N.C. App. at 376, 333 S.E. 2d at 503.

We again find it unnecessary to reach the point as a general proposition, for we find in this case that the record establishes as a matter of law that good cause existed for allowing late filing of the notice of defense of insanity. The trial judge therefore erred in excluding the defendant's offer of proof of insanity and in refusing to allow him to rely upon insanity as a defense.

The record shows without contradiction that from 12 February 1982 until 25 October 1982, Mr. Fitch was undertaking to represent the defendant. Mr. Farris' role is unclear, but the record also clearly indicates that he was employed by the defendant's family, was not defendant's attorney of record, and was acting only to assist the defense counsel. When on the date of trial the counsel responsible for trial of the case was justifiably unavailable and other counsel was required to assume responsibility for the defendant's defense, the defendant's right to counsel required that his counsel be given sufficient time in preparation that his representation could be effective. *State v. Harris,* 290 N.C. 681, 228 S.E. 2d 437 (1976). Since Mr. Farris had no opportunity and apparently no authority prior to removal of Mr. Fitch as counsel of record to file a notice of defense of insanity on behalf of the defendant, he should have been given an opportunity to do so when, almost immediately upon removal of prior counsel, he attempted to give the statutory notice. While the record does not reflect what defense Mr. Fitch might have anticipated or what approach, based upon his evaluation of the information known to him, he was planning to use, a new attorney, not practicing in the same law firm or agency with original counsel,[1]

---

1. The cases of *State v. Bennett,* 237 N.C. 749, 76 S.E. 2d 42 (1953), *State v. Williams,* 34 N.C. App. 408, 238 S.E. 2d 668, *review denied, appeal dismissed,* 293 N.C. 743, 241 S.E. 2d 72 (1977), *cert. denied,* 436 U.S. 906, 56 L.Ed. 2d 404 (1978) and *State v. Moffitt,* 11 N.C. App. 337, 181 S.E. 2d 184, *appeal dismissed,* 279 N.C.

and not having dealt personally with the client in trial preparation, certainly could be expected to approach defense of the case differently than did the first lawyer. If, in his judgment, a defense of insanity would be appropriate (and the evidence in the record clearly suggests that an insanity defense would not have been frivolous in this case), he should be given a reasonable opportunity to develop the defense.

We therefore hold that under the special facts of this case, the trial judge erred in not allowing the defendant to rely on a defense of insanity. The decision of the Court of Appeals is

Modified and affirmed.

396, 183 S.E. 2d 247 (1971) are distinguishable because they involve either the absence at trial of one of two retained counsel equally familiar with the case or substitution of counsel in the same law firm or public defender's office and because they do not involve denial of the defendant's ability to present a recognized defense due to a procedural bar.