STATE v. QUICK

[226 N.C. App. 541 (2013)]

———————

STATE OF NORTH CAROLINA
v.
ISHMAEL LAMAR QUICK

No. COA12-1111

Filed 16 April 2013

**Constitutional Law—right to counsel violation—right against self-incrimination violation—motion to suppress statements**

The trial court did not err by suppressing defendant's statements based on violations of his right to counsel and right against self-incrimination. Defendant asserted his right to counsel and did not initiate communication with the police. Even if defendant had initiated communications, the State did not prove that any waiver therefrom was knowing and intelligent. Finally, the issue of whether defendant was in custody was not preserved for appellate review because it was not argued at trial.

Appeal by the State from order entered 14 May 2012 by Judge Mary Ann Tally in Cumberland County Superior Court. Heard in the Court of Appeals 27 February 2013.

*Attorney General Roy Cooper, by Assistant Attorney General Joseph L. Hyde, for the State.*

*Rudolf Widenhouse & Fialko, by M. Gordon Widenhouse Jr., for defendant.*

HUNTER, JR., Robert N., Judge.

**STATE v. QUICK**

[226 N.C. App. 541 (2013)]

The State appeals from an order entered 14 May 2012 suppressing statements made by Ishmael Lamar Quick ("Defendant") based on violations of his right to counsel and right against self-incrimination. We affirm the trial court's order.

## I. Factual & Procedural Background

On 27 April 2010, Defendant was in custody at the Harnett County Detention Center. Detective Rodney Jackson of the Harnett County Sherriff's Office had secured warrants for additional charges against Defendant and led him from the jail to the interrogation room of the Sherriff's Department. After Detective Jackson read Defendant his *Miranda* rights at 12:32 p.m., Defendant said that he wanted his attorney present and asked to contact his attorney.

Detective Jackson and Defendant left the interrogation room and went to another room, where Defendant tried to use the phone to contact his lawyer. When he was unable to contact his attorney, Defendant left a message. Detective Jackson returned Defendant to the interrogation room and asked if he "still wanted his lawyer present." Defendant again said that he wanted his attorney.

While walking from the interrogation room back to the jail, Detective Jackson told Defendant that he would be serving him with more warrants. He told Defendant that an attorney did not need to be present, that an attorney would not help with the warrants, and that the warrants would be served regardless of whether the attorney was there. At that point, Defendant said, "We need to talk."

Detective Jackson returned Defendant to the interrogation room and re-read him his *Miranda* rights at 12:39 p.m. At 12:48 p.m., a waiver form was filled out, and Defendant signed the form indicating that he wanted to talk without his attorney. The form was witnessed by another detective at 12:59 p.m.

Defendant was indicted on charges of felonious breaking or entering, felonious larceny pursuant to a breaking or entering, felonious possession of stolen goods, and felonious conspiracy to commit breaking or entering. On 8 May 2012, Defendant filed a motion to suppress based on violations of his Sixth Amendment rights. A hearing was held before Judge Mary Ann Tally in Cumberland County Superior Court on 10 May 2012. On 14 May 2012, the trial court granted the motion to suppress. The State filed timely notice of appeal.

## II. Jurisdiction & Standard of Review

This Court has jurisdiction pursuant to N.C. Gen. Stat. §§ 15A-979(c) and 15A-1445(b) (2011). Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). "The trial court's conclusions of law . . . are fully reviewable on appeal." *State v. Hughes*, 353 N.C. 200, 208, 539 S.E.2d 625, 631 (2000).

## III. Analysis

The State argues that the trial court erred in granting Defendant's motion to suppress because: (1) Defendant was not in custody; (2) Defendant initiated a communication with police; and (3) Defendant's waiver was knowing and intelligent. We disagree and thus affirm the order of the trial court.

*Miranda v. Arizona*, 384 U.S. 436, 444 (1966), established that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda* established a right to counsel if the defendant "indicates in any manner and at any stage of the process that he wishes to consult with an attorney before speaking." *Id.* at 444-45. "[D]uring custodial interrogation, once a suspect invokes his right to counsel, all questioning must cease until an attorney is present or the suspect initiates further communication with the police." *State v. Dix*, 194 N.C. App. 151, 155, 669 S.E.2d 25, 28 (2008) (citing *Edwards v. Arizona*, 451 U.S. 477, 485 (1981)).

The State first contends that Defendant was not in custody for purposes of *Miranda*. However, we do not need to address this argument, as it was not raised at the trial court hearing. The State argued at the hearing that Defendant initiated his communication with the police. The State never argued or mentioned Defendant not being in custody. "[A] contention not raised and argued in the trial court may not be raised and argued for the first time on appeal." *In re Hutchinson*, ___ N.C. App. ___, ___, 723 S.E.2d 131, 133 (2012); *see also Weil v. Herring*, 207 N.C. 6, 10, 175 S.E. 836, 838 (1934) ("[T]he law does not permit parties to swap horses between courts in order to get a better mount. . . ."). We therefore will not consider the State's argument that Defendant was not in custody.

The State next argues that Defendant initiated contact with the police following his initial request for counsel and thus waived his right to counsel. "A valid waiver can only occur if the defendant reinitiates the conversation and the waiver was knowing and intelligent." *State v. Tucker*, 331 N.C. 12, 35-36, 414 S.E.2d 548, 561 (1992).

The trial court in the present case found both that Defendant did not reinitiate and that Defendant's waiver was not "knowing and intelligent." The State does not contest the trial court's finding of fact that, after Defendant had attempted to contact his attorney, Detective Jackson returned Defendant to the interrogation room and asked him again if he wanted an attorney. Defendant answered in the affirmative. The State also does not contest the trial court's finding of fact that

> On the way back from the interrogation room, Detective Jackson told the defendant that he [had] more warrants to serve on him, that an attorney would not be able to help with the warrants, and that defendant would be served with the warrants regardless of whether the attorney was there or not. Defendant thereafter agreed to talk.

The State argues that the trial court was incorrect in concluding from these facts that Defendant did not initiate the communication.

"Interrogation" under *Miranda* encompasses "not only . . . express questioning, but also . . . any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980). The test is whether the police "should have known" their comments were likely to elicit an incriminating response. *Id.* at 302.

In the present case, after Defendant asserted his right to counsel once, the police returned him to the interrogation room and again asked if wanted counsel, to which he said yes. Then, on the way from the interrogation room back to the jail, Detective Jackson told Defendant that an attorney would not able to help him and that he would be served with the warrants regardless of whether an attorney was there. This communication went beyond the statements normally attendant to arrest and custody. The police knew or should have known that telling Defendant that an attorney could not help him with the warrants would be reasonably likely to elicit an incriminating response. It was only after this statement by police that Defendant agreed to talk. Defendant did not initiate the communication.

This case is distinguishable from holdings in *State v. Allen*, 200 N.C. App. 709, 684 S.E.2d 526 (2009), and *State v. Thomas*, 310 N.C. 369, 312 S.E.2d 458 (1984). In *Allen*, the detective merely stated that the defendant was being charged with second-degree murder and then proceeded to serve the defendant with the warrants. 200 N.C. App. at 718-19, 684 S.E.2d at 533. Our Court found that this did not constitute interrogation, as the detective merely stated the charges brought against the defendant, statements "normally attendant to arrest and custody." *Id.* at 719, 684 S.E.2d at 533 (quotation marks and citation omitted). The statements in the present case, however, go beyond those "normally attendant to arrest and custody." Detective Jackson went further in stating that "an attorney would not be able to help [Defendant] with the warrants," making comments he knew or should have known were reasonably likely to elicit an incriminating response.

In *Thomas*, the detective remarked to the defendant that "he should be sure and tell his attorney [that] he had a chance to help himself and did not do so." 310 N.C. at 377, 312 S.E.2d at 463. Five minutes later, the defendant asked the officers whether they still wanted a statement. *Id.* The officers told the defendant it was up to him, and the defendant stated he would like to give a statement. *Id.* Our Supreme Court found that the officer's " 'off-hand' remark" was not interrogation because the officer should not have known that it was reasonably likely to provoke the defendant into making an incriminating statement. *Id.* at 377-78, 312 S.E.2d at 463. Our Supreme Court found that the defendant's statement was not in response to any question asked by officers and was thus admissible. *Id.* at 377-79, 312 S.E.2d at 463-64. In the present case, however, Defendant's statement was in direct response to Detective Jackson's comments that an attorney would not be able to help him. While the detective in *Thomas* made an off-hand comment about the defendant telling his attorney he had the opportunity to help himself and didn't, Detective Jackson in the present case told Defendant that an attorney would not be able to help him. This is more than an off-hand remark. In addition, unlike *Thomas*, Defendant was willing to talk immediately after Detective Jackson's comments. There was no gap in time between the comments and Defendant's response. The facts of this case are distinguishable from *Thomas* and Defendant did not initiate communications with police.

Assuming, *arguendo*, that Defendant had initiated communication with police, the trial court also found that Defendant's waiver was not knowing and intelligent. "A defendant may waive his Miranda rights, but the State bears the burden of proving that the defendant made a

knowing and intelligent waiver." *State v. Brown*, 112 N.C. App. 390, 396, 436 S.E.2d 163, 167 (1993). "Whether a waiver is knowingly and intelligently made depends on the specific facts of each case, including the defendant's background, experience, and conduct." *Id.* Age, although not determinative, can be one of the factors considered as part of the totality of the circumstances. *In re J.D.B.*, 196 N.C. App. 234, 240-41, 674 S.E.2d 795, 800 (2009).

In the present case, the trial court found that the prosecution failed to meet its burden of showing that Defendant made a knowing and intelligent waiver under the totality of the circumstances. It included in those circumstances the facts that: (1) Defendant was 18 years old and had limited experience with the criminal justice system; (2) there was a period of time between 12:39 p.m. and 12:54 p.m. where there is no evidence as to what occurred; and (3) there was no audio or video recording.

After initially asserting his right to counsel at 12:32 p.m. and trying to contact his attorney, Defendant was taken back into the interrogation room, where Detective Jackson told him to let him know once he had an attorney if he wanted to talk. Defendant reaffirmed that he still wanted his lawyer present. Then, on the way back from the interrogation room, Detective Jackson told Defendant that he was being served with more warrants and that an attorney would not be able to help. Defendant was then returned again to the interrogation room for a third time and re-advised of his *Miranda* rights at 12:39 p.m. Only seven minutes elapsed between Defendant's initial assertion of his right to counsel and his supposed waiver of that right, during which time Defendant tried to contact his attorney and reasserted his right to counsel at least once. A waiver form was filled out at 12:48 p.m. and witnessed at 12:59 p.m. There is no evidence as to what transpired in the interrogation room between 12:39 p.m. and 12:59 p.m. The timeline, along with the statements by police that an attorney would not be able to help with the warrants, suggest that any waiver by Defendant was not knowing and intelligent.

Defendant's age and inexperience, when combined with the circumstances of his interrogation, support the trial court's conclusion that the State failed to prove Defendant's waiver was knowing and intelligent.

## IV. Conclusion

Because Defendant asserted his right to counsel and did not initiate communication with the police, the trial court did not err in granting Defendant's motion to suppress. In addition, even if Defendant had initiated communications, the State did not prove that any waiver therefrom

was knowing and intelligent. For the foregoing reasons, the trial court's order granting Defendant's motion to suppress is

Affirmed

Judge CALABRIA concurs.

Judge STEELMAN concurs with a separate opinion.

STEELMAN, Judge, concurring.

I concur with the result reached by the majority in that the State fails to challenge the facts found by the trial court, and those facts support the conclusions of law reached by the trial court.